1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12
13
14
15
16

DARREN HOWERTON,

Plaintiff,

v.

EARTHGRAINS BAKING
COMPANIES, INC., a Delaware
corporation, et al.,

Defendants.

Case No.  1:13-cv-01397-AWI-SMS

**ORDER DENYING
MOTION FOR REMAND**

(Doc. 8)

17
18
19
20
21
22
23
24

   Plaintiff Darren Howerton, by his attorneys, Cornwell & Sample, LLC, and Penner, Bradley & Simonian, moves to remand this case to Fresno County Superior Court.  The Court took this motion under submission on October 30, 2013.  Having reviewed the complete file, including the parties' briefs and applicable law, the Court concludes that § 301 (29 U.S.C. § 185(a)) of the Labor Management Relations Act of 1947 (29 U.S.C. § 141 *et seq.*) (the "LMRA") completely preempts Plaintiff's state claims.  Accordingly, the Court denies Plaintiff's motion for remand.

25
26
27
28

## I.  <u>Procedural History</u>

   On July 30, 2013, Plaintiff filed a complaint in Fresno County Superior Court alleging claims of defamation, violation of California Labor Code §§ 1050 and 1054, intentional and

negligent infliction of emotional distress, and intentional and negligent interference with prospective economic advantage.  On August 30, 2013, Defendants removed the case to federal district court, alleging that the LMRA completely preempted Plaintiff's claims and that because Defendants Chuck Linthicum and Kimberly Zepeda, both California residents, were improper and sham parties, the federal district court also had diversity jurisdiction over the dispute.

On September 6, 2013, Defendants moved to dismiss the complaint.  On September 27, 2013, Plaintiff moved for remand and sanctions.

## II.   Factual Allegations

According to the complaint, the corporate defendants are entities organized outside the state of California who owned and controlled a bakery plant in Fresno County, California.  The individual defendants, Chuck Linthicum and Kimberly Zepeda, were plant managers.  Plaintiff began working at the plant in 1987.

In 2004, Plaintiff was promoted to the position of receiving clerk.  His job responsibilities included accounting for the flour received and used in plant operations.  At some unspecified time following Plaintiff's promotion, an unnamed plant manager recognized that plant operations consumed more flour than that specified by plant policies and product formulations, resulting in a discrepancy between the amount of flour received and the amount of bakery produced.  Plaintiff had no control of those policies and formulations.

In 2010, Plaintiff told Linthicum that he was accounting for the additional flour being consumed in plant operations by allocating it to a computer account designated "201-Usage." Linthicum directed Plaintiff not to account for the discrepancy using the 201-Usage account. Plaintiff considered Linthicum to be directing him to depart from proper procedures.

On August 1, 2012, Defendants suspended Plaintiff from his job, alleging that Plaintiff was responsible for the lost inventory.  On August 6, 2012, he was terminated for

2

misappropriation of inventory based on Zepeda's written statement, authorized by Linthicum, that Plaintiff was "'misappropriating' and 'altering' ingredient inventory 'contrary to personal and business standards of ethical conduct.'"  Doc. 1 at 14.  Copies of the notice were served on Plaintiff and placed within his personnel file.  Plaintiff maintains that he neither misappropriated nor altered ingredient inventory, but that the flour was being used to produce bakery.  Plaintiff interprets Zepeda's statement as stating that he had embezzled or stolen from his employer and contends that her statement injured his reputation and potential for employment.

### III.  Removal or Remand

Federal law empowers a defendant to remove an action to federal court if the district court has original jurisdiction.  28 U.S.C. § 1441(a).  "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Subject matter jurisdiction may be invoked under 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1332(a)(diversity).  Defendants argue that both federal question and diversity jurisdiction justified removing this case to federal court.  Not surprisingly, Plaintiff disagrees.

#### A.  Federal Question Jurisdiction

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  This means that a complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.  *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation*, 524 F.3d 1090, 1100 (9th Cir. 2008).  Defendants contend that because Plaintiff was employed under a collective bargaining agreement, the LMRA preempts state laws and creates a federal question in lieu of Plaintiff's state common law claims.

Section 301 of the LMRA, codified at 29 U.S.C. §185(a), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

To ensure uniformity and predictability in the meaning of collective bargaining agreements, § 301 preempts state law rules that substantially implicate the meaning of the terms of collective bargaining agreements. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985). A state court suit alleging violation of a provision of a collective bargaining agreement must be brought under § 301 and be resolved by reference to § 301. *Id.* Section 301 does not preempt substantive rights provided to workers by a state so long as the claim of state-granted rights can be resolved without reference to the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1988). Put another way, a state court may adjudicate a worker's state law claims "involving labor-management relations only if such [claims] do not require construing collective-bargaining agreements." *Id.* at 411.

Generally, the "well-pleaded complaint rule" governs the determination of the presence or absence of federal jurisdiction. *Caterpillar*, 482 U.S. at 392. Under the rule, federal jurisdiction exists only if a federal question is presented on the complaint's face. *Id.* As Plaintiff points out, a case may not ordinarily be removed to federal court based solely on the defendant's assertion of a federal defense, including a defense of federal preemption. *Id.* at 393; *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for So. California*, 463 U.S. 1, 12 (1983).

But controversies involving collective bargaining agreements fall within an exception to the rule dubbed the "complete preemption doctrine." *Galvez v. Kuhn*, 933

F.2d 773, 776 (9th Cir. 1991). Under the complete preemption doctrine, when federal law has completely preempted an area of state law, any claim based on the preempted state law is a federal claim from its inception and is deemed to have arisen under federal law. *Caterpillar*, 482 U.S. at 393. Thus, even though Plaintiff purportedly makes his claims under California law, if the Court determines that those claims are completely preempted by § 301, the case was properly removed to federal court, and remand is inappropriate. *See Busey v. P.W. Supermarkets, Inc.*, 368 F.Supp.2d 1045, 1048 (N.D.Cal. 2005).

> [T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.
>
> *Franchise Tax Bd.*, 463 U.S. at 23, *quoting Avco Corp. v. Aero Lodge No. 735, Internat'l Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968).

Whether or not the complaint explicitly refers to the collective bargaining agreement is not dispositive. *Allis-Chalmers*, 471 U.S. 202, 210-11 (1985). Instead, preemption exists if the state claims require the court to interpret the collective bargaining agreement or if the state claims are "substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract." *Lingle*, 486 U.S. at 410; *Allis-Chalmers*, 471 U.S. at 213. As a result, even tort claims such as those advanced by Plaintiff are governed by federal law if their evaluation is "inextricably intertwined with consideration of the terms of [a] labor contract." *Allis-Chalmers*, 471 U.S. at 213. *See also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987) (observing that pursuant to *Allis-Chalmers*, a plaintiff cannot avoid the preemptive effect of § 301 by recasting his or her contract claims as tort claims).

///

Nonetheless, § 301 does not preempt every claim concerning employment or tangentially implicating a provision of the collective bargaining agreement. *Id.* at 211. A state claim is not preempted if the court can uphold it without interpreting the terms of the collective bargaining agreement. *Id.* Thus, a court must determine whether each state claim is a "non-negotiable state law right" that exists independent of the collective bargaining agreement. *Id.* at 213. The analysis requires the court to look beyond the literal wording of the complaint to its substance.

"Plaintiffs may not avoid removal by 'artfully pleading' their claims to omit references to preemptive federal law." *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988). When federal law completely preempts the state law on which the claim relies, the case may be removed to federal court even if the complaint does not refer to the federal law. *Id.* A court must analyze the plaintiff's claims to determine whether they can only be resolved by reference to the provisions of the collective bargaining agreement. *Id.* at 1216. If the collective bargaining agreement defines the defendant's authority and the plaintiff's rights with regard to the claim, the claim is not independent of the collective bargaining agreement. *Id.*

In accordance with these principles, the Court will examine each claim individually. The Court's review raises serious questions about whether Plaintiff's claims are cognizable. Sufficiency of the pleadings will be addressed in the Court's separate order regarding Defendants' motion to dismiss.

## 1.   __Defamation__

"Defamation is an invasion of the interest in reputation." *Smith v. Maldonado*, 72 Cal.App.4[th] 637, 645 (1999). In California, the elements of the tort of defamation include (1) a publication that is (2) false, (3) defamatory, and (4) unprivileged, and (5) that has a

natural tendency to injure or to cause special damage. *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). A plaintiff must allege facts supporting each element of a defamation claim. *Harrell v. George*, 2012 WL 3647941 (E.D.Cal. August 22, 2012) (No. CIV. S-11-0253 MCE DAD PS). To establish a statement's falsity, among other elements, the Plaintiff must allege the actual statement made by the defendant. *Chaffee v. Chiu*, 2012 WL 4343824 at * 5 (N.D.Cal. September 20, 2012) (No. 4:11-cv-05118-YGR).

The complaint itself does specifically not set forth the full statement alleged to be defamatory. Plaintiff alleges only that "Defendants terminated plaintiff with the oral and written statement that [P]laintiff was terminated for 'misappropriating' and 'altering' ingredient inventory 'contrary to personal and business standards of ethical conduct.'" Doc. 1 at 15, ¶ 8. He adds that the written statement was placed in his file, requiring him to disclose its content to prospective employers. Thus, the complaint's only allegation of publication by Defendants is the placement of the discharge letter in Plaintiff's file. [1]

Putting aside the question of the sufficiency of Plaintiff's claim, the propriety of its removal rests on the question of whether its resolution requires consideration of the terms of the collective bargaining agreement. Substantial precedent instructs the Court on how to evaluate Plaintiff's defamation claim.

In *Tellez v. Pacific Gas and Elec. Co., Inc.*, 817 F.2d 536, 537 (9th Cir.). *cert. denied*, 484 U.S. 908 (1987), the Court considered the defamation claim of an employee whose manager sent eleven other managers copies of the plaintiff's suspension notice, which recounted the employee's illegal drug purchase. Because the collective bargaining

---

[1] Plaintiff's own election to disclose the documentation of the reasons for his discharge from the bakery does not constitute publication by Defendants. Consent of the party allegedly defamed is an absolute privilege that is a defense to a claim of defamation. *Royer v. Steinberg*, 90 Cal.App.3d 490, 498 (1979). As a result, "publication" of the alleged defamatory statement must be made by the person accused of defaming the claimant. *Forte v. Jones*, 2013 WL 1164929 at * 5 (E.D.Cal. March 20, 2013) (No. 1:11-cv-0719-AWI-BAM).

agreement was silent regarding suspension letters, the Court concluded that accused manager could not have been acting in conformity with the collective bargaining agreement. Finding that the claim neither asserted rights derived from the collective bargaining agreement nor required interpretation of its terms, the court concluded that § 301 did not preempt the defamation claim. *See also Lopez v. Fox Television Animation, Inc.*, 76 Fed.Appx. 769, 772 (9th Cir. 2003) (holding that because the plaintiff's defamation claim existed independently of the collective bargaining agreement, § 301 did not preempt it); *Busey*, 368 F.Supp. 2d at 1051 (finding the plaintiff's defamation claim not preempted by § 301 since the alleged defamatory comments had been made in an informal memorandum and resolution of claim did not require an interpretation of the collective bargaining agreement).

In contrast, when the facts forming the basis of a defamation claim are "inextricably intertwined with the grievance machinery of the collective bargaining agreement," the defamation claim is preempted by federal labor law. *Scott v. Machinists Automotive Trades Dist. Lodge 190 of No. California*, 827 F.2d 589, 594 (9th Cir. 1987). For example, when the collective bargaining agreement required the employer to notify the employee and the union in writing of the charges against the discharged employee, the employees' defamation claims were preempted. *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989).

Here, the propriety of Defendants' actions in preparing a written letter documenting the discharge and retaining the letter in Plaintiff employment file must be considered in the context of the collective bargaining agreement. Section 3 of the collective bargaining agreement provides, among other things, that "[e]mployees may be discharged for cause, but in the case of dismissal, a reason shall be given therefore by the

Company to the employee at the time of such dismissal and also to the Union within twenty-four (24) hours after such dismissal."  Doc. 12-2 at 6.  Any analysis of the implications of the Defendants' election to provide the required notice in writing and to retain a copy of the notice in Plaintiff's personnel file must consider the relation of the alleged defamation to the contract requirements.  As a result, the defamation claim is completely preempted and is subject to federal question jurisdiction from its inception. Defendants properly removed the defamation claim.

> **2.      California Labor Code §§ 1050 and 1054**

Based on the content of the termination notice, Plaintiff alleges that Defendants violated California Labor Code § 1050, entitling him to treble damages pursuant to California Labor Code § 1054.  Section 1050 provides, "Any person, or agent or officer thereof, who, having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent to former employee from obtaining employment is guilty of a misdemeanor." Section 1054 provides that any person, agent, or officer who violated § 1050, among others, is liable to the aggrieved party for treble damages.  These provisions are part of the section of the Labor Code intended to prevent employers from blacklisting pro-union employees.

Labor Code § 1050 applies only to representations made by the defendant to prospective employers other than the defendant. *Kelly v. General Telephone Co.*, 136 Cal.App.3d 278, 288 (1982).  It does not apply to representations made by employees of the defendant to other employees of the defendant. *Id.*  As a result, Plaintiff's claims under § 1050 must be construed in the context of the termination notice, the process by which it was provided to Plaintiff, and the extent to which it did or did not conform to the

requirements of the collective bargaining agreement.  Because the Court cannot evaluate this claim without reference to the notice requirements of the collective bargaining agreement, § 301 preempts the state claim.

### 3.        Intentional Infliction of Emotional Distress

To state a claim of intentional infliction of emotional distress in California, a claimant must allege facts to establish (1) outrageous conduct; (2) intent by the defendant to cause emotional distress, or reckless disregard for the possibility that its conduct will cause emotional distress; (3) the plaintiff's suffering of severe emotional distress; and (4) the defendant's conduct as the actual or proximate cause of the emotional distress. *Hughes v. Pair,* 46 Cal.4th 1035, 1050 (2009). To be outrageous, the defendant's conduct must be so extreme as to exceed the bounds of behavior usually tolerated in a civilized community.  *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007).  "Liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  *Hughes*, 46 Cal.4th at 1050, *quoting* Restatement 2d of Torts, § 46, com. d.  Severe emotional distress requires "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1004 (1993).  Because personnel management is essential to the welfare and prosperity of society, personnel actions such as hiring and firing are generally insufficient to support a claim of intentional infliction of emotional distress. *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996).

"Claims for intentional infliction of emotional distress are frequently preempted by section 301."  *Milne Employees Ass'n v. Sun Carriers, Inc*, 960 F.2d 1401, 1412 (9th Cir. 1991), *cert. denied*, 508 U.S. 959 (1993).  "When the [collective bargaining

agreement] governs the behavior, and the underlying claims are preempted, the

[intentional infliction of emotional distress] claims relying on them are also preempted."

*Lee v. Eden Medical Center*, 690 F.Supp.2d 1011, 1021 (N.D.Cal. 2010).  *See also*

*Shane*, 868 F.2d at 1063; *Young*, 830 F.2d at 1002; *Kirton v. Summit Medical Center,* 982

F.Supp. 1381, 1387 (N.D.Cal. 1997).  As with defamation claims, however, a claim of

intentional infliction of emotional distress is not preempted if it can be resolved without

reference to the collective bargaining agreement.  *Cook v. Lindsay Olive Growers*, 911

F.2d 233, 239 (9th Cir. 1990).

   Since Cook's emotional distress claim arose out of his discharge from

employment and his employer's related conduct, his claim required evaluation with

reference to the collective bargaining agreement and was preempted.  *Id.* at 239-40.

Similarly, in *Milne Employees*, the plaintiff's emotional distress claims were preempted

since the court needed to refer to the collective bargaining agreement in analyzing

whether the defendants' conduct of the layoffs that gave rise to the emotional distress

claims was arguably reasonable.  960 F.2d at 1413.  A plaintiff's claims of emotional

distress grounded in claims of the defendants' failure to process grievances, false filings

of work infractions, removal of plaintiff as a union delegate, arbitrary requirement of

physical exam, and termination without cause were also preempted by § 301 since they

were "inextricably intertwined" with the terms of the collective bargaining agreement.

*Hyles*, 849 F.2d at 1216.

   Where an emotional distress claim based on the defendant's alleged breach of the

employment contract and requirement that the plaintiff undergo psychiatric testing

required consideration of the clause of the collective bargaining agreement limiting

discharge and disciplinary actions to just cause, § 310 preempted the state claim.  *Lee*,

690 F.Supp.2d at 1021.  An emotional distress claim based on the defendant's wrongful

discharge of the plaintiff was also preempted since evaluating the discharge's validity

required the court to analyze the collective bargaining agreement.  *Harris v. Alumax Mill

Products, Inc.*, 897 F.2d 400, 403 (9th Cir.), *cert. denied*, 498 U.S. 835 (1990).  *See also

Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989); *Stallcop v.

Kaiser Foundation Hosp.*, 820 F.2d 1044, 1049 (9th Cir.), *cert. denied*, 484 U.S. (1987);

and *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1149-50 (9th Cir. 1988), all of

which found emotional distress claims grounded in the plaintiffs' discharge to be

preempted since analysis required consideration of the collective bargaining agreements'

terms.  In contrast, because the prohibition of illegal acts exists independent of the

collective bargaining agreement, an emotional distress claim grounded in a supervisor's

assault and battery of the employee was not preempted.  *Galvez*, 933 F.2d at 777.

This Court's analysis of Plaintiff's claim of intentional infliction of emotional

distress will require careful consideration of the terms and requirements of the collective

bargaining agreement to determine whether the discharge process conformed to its

provisions.  Thus, § 301 preempts Plaintiff's claim of intentional infliction of emotional

distress.

### 4.    <u>Negligent Infliction of Emotional Distress</u>

The California Supreme Court has held that no independent cause of action exists

for a claim of negligent infliction of emotional distress.  *Potter*, 6 Cal.4[th] at 984.  *See also

Chaconas v. JP Morgan Chase Bank*, 713 F.Supp.2d 1180, 1186-88 (S.D. Cal. 2010)

(citing *Potter* and other cases).  In California, negligent infliction of emotional distress is

simply a variant of the tort of negligence, requiring a plaintiff to allege the traditional

///

elements of duty, breach of duty, causation, and damages. *San Joaquin Sheriff's Ass'n v. County of San Joaquin*, 898 F.Supp.2d 1177, 1192 (E.D. Cal. 2012).

Negligent infliction of emotional distress claims include two variants: bystander plaintiff and direct-victim plaintiff. *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037 (1998). Bystander claims, which arise from the plaintiff having observed an injury to a third party, are based on a duty owed by the tortfeasor to the public in general. *Christenson v. Superior Court*, 54 Cal.3d 868, 884 (1991). In contrast, direct-victim cases are cases in which the plaintiff's claim of emotional is based on a duty owed directly to plaintiff. *Wooden*, 61 Cal.App.4th at 1073. In this case, Plaintiff alleges that he is a direct victim. To establish a claim for negligent infliction of emotional distress under a direct victim theory, a plaintiff must allege that he or she has suffered serious emotional distress. *Id.*

[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, a direct victim's recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. *Potter*, 6 Cal.4th at 985. The need to fully analyze the nature of Defendants' legal duty to Plaintiff requires analysis of the terms of the collective bargaining agreement. *See, e.g., Tsao v. County of Los Angeles*, 2009 WL 4705422 at *9 (C.D.Cal. Dec. 3, 2009) (No. CV 09-01268 DDP (CWX)) (holding that § 301 preempted the claim because with regard to the plaintiff's claim of negligent infliction of emotional distress, the defendant's duty of care arose from the relationship defined by the collective bargaining agreement). Accordingly, the LMRA preempts Plaintiff's claim for negligent infliction of emotional distress.

///

### 5.    Intentional Interference With Prospective Economic Advantage

Under California law, the elements of the tort of intentional interference with prospective economic advantage include (1) an economic relationship between the plaintiff and a third party containing the probability of a future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the defendant.  *Conkle v. Jeong*, 73 F.3d 909, 918 (9th Cir. 1995), *cert. denied*, 519 U.S. 811 (1996).  Mere interference is not sufficient: the defendant's conduct must be proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.  *Edwards v. Arthur Anderson LLP*, 44 Cal.4th 937, 944 (2008).  "An act is not independently wrongful simply because defendant acted with an improper motive."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1158 (2003).  In other words, for a defendant's actions to be wrongful the allegedly tortious actions must be independently actionable.  *Id.* at 1158-59.

As with the other torts alleged in the complaint, the sufficiency of Plaintiff's allegations supporting his claim of intentional interference with prospective economic advantage is problematic, particularly the requirement that Plaintiff identify the specific party with which it had an ongoing relationship with which Defendants interfered.  *See Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867 at *10 (N.D.Cal. May 8, 2013) (No. 5:12-cv-1739-LHK); *Anderson v. American Airlines, Inc.*, 2011 WL 855820 at * 4 (N.D.Cal. March 9, 2011) (No. C 08-04195 WHA).  For purposes of this remand motion, the Court need only consider the requirement of independent wrong doing.

The plaintiff bears the burden of establishing that the defendant's conduct was "independently wrongful and, therefore, was not privileged."  *Gemini Alum. Corp. v.*

14

*California Custom Shapes, Inc.*, 95 Cal.App.4[th] 1249, 1257 (2002).  The court's evaluation of the tort claim generally will require analysis of the collective bargaining agreement.

Ultimately, the court must analyze the collective bargaining agreement to determine whether defendants' notice was wrongful.  This analysis necessarily implicates the collective bargaining agreement since the notice cannot be wrongful if it complied with the requirements of the contract.  *See Rachford v. Air Line Pilots Ass'n*, 2006 WL 1699578 at *7 (N.D.Cal. June 16, 2006) (No. C 03-3618 PJH) (holding that the plaintiffs' claims for interference with prospective economic advantage were preempted by § 301 since determining whether the defendants failed to use due care in their relationship with plaintiffs required the court to interpret the [collective bargaining agreement]).

**6.**      **Negligent Interference With Prospective Economic Advantage**

To allege a cognizable claim of negligent interference with prospective economic advantage the plaintiff must demonstrate that "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantages reasonably expected."  *Damabeh*, 2013 WL 1915867 at * 8, *quoting Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, 2011 WL 5360074 at *5 (S.D. Cal. Nov. 3, 2011) (No. 11-cv-565-L WVG).  "The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care."  *Silicon Knights, Inc. v.*

*Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1313 (N.D.Cal. 1997).  *See also Damabeh*, 2013 WL 1915867 at * 9 ("Plaintiff's claim fails because Plaintiff failed to show that Defendant owed Plaintiff a duty of care").  Since Defendants' duty of care to Plaintiff must be considered in the context of the collective bargaining agreement, § 301 preempts this claim.

### B.     Diversity Jurisdiction

To establish diversity jurisdiction, the sum or matter in controversy must exceed $75,000 and the parties must be citizens of different states.  Because Plaintiff, Linthicum, and Zepeda are all citizens of California, diversity jurisdiction does not exist on the face of the complaint. Defendants contend that Linthicum and Zepeda are sham defendants, not properly named as defendants in this case.  Although the parties argue Linthicum's and Zepeda's status in great detail, since the Court concludes that it has federal question jurisdiction over the case, it need not determine whether diversity jurisdiction also exists.  *See Caterpillar*, 482 U.S. at 1.  *See also* 29 U.S.C. § 185(a) (providing federal question jurisdiction without regard to the citizenship of the parties).

### V.     Conclusion and Order

Section 301 of the LMRA completely preempts Plaintiff's state claims, all of which must be determined with reference to the collective bargaining agreement.  Accordingly, the Court hereby DENIES Plaintiff's motion for remand.

IT IS SO ORDERED.

Dated:   **December 11, 2013**          **/s/ Sandra M. Snyder**
                                                    UNITED STATES MAGISTRATE JUDGE

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28